IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH DOUGHERTY, et al. | CRIMINAL ACTION<br>1,2,5,7,8<br>NO. 14-69-9 and -10 |

Baylson, J.                                                                                                July 21, 2014

## MEMORANDUM RE: MOTIONS TO DISMISS

Ten members of the Ironworkers Local 401 union were indicted on eight counts, including RICO conspiracy, violent crime in aid of racketeering, arson, use of fire to commit a felony, and conspiracy to commit arson. Five of the ten defendants now move to dismiss the indictment against them as insufficient.

### I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

The indictment alleges members of the Ironworkers Local 401 union engaged in systemic intimidation and threats to secure unwanted or unnecessary work for their members. Count One alleges Joseph Dougherty, Edward Sweeney, Christopher Prophet, Richard Ritchie, and William O'Donnell (Defendants) and other defendants, conspired to violate that Racketeer Influenced and Corrupt Organizations (RICO) Act. Count Two alleges Ritchie committed violent crime in aid of racketeering. Counts Three through Eight charge Dougherty, Sweeney, and others with arson, use of fire to commit a felony, and conspiracy.

The indictment alleges that when Defendants identified projects where non-union labor and unions other than the Ironworkers Local 401 were hired, a "Business Agent would implicitly or explicitly threaten the foreman with violence, destruction of property, or other criminal acts if

1

the contactor [sic] did not hire members of the Ironworkers Local 401." Indictment ¶¶6-7. "If the contractor refused to accede to the defendants and their associates' demands, members and associates of the Ironworkers Local 401 would employ both legal and illegal action to coerce, force, and extort the contractor to hire union ironworkers." Indictment ¶8. This included lawful picket lines, and unlawful "violence and threats of violence to force and illegally extort contractors into hiring members of the Ironworkers Local 401." Indictment ¶8. Acts of violence included personal assault with baseball bats, vandalizing vehicles, damaging and stealing construction equipment, arson, destroying property at construction sites, and removing and changing locks on construction sites, or putting glue in the locks. Indictment ¶9. These acts were also committed against other unions, particularly the carpenters union. Indictment ¶13.

Dougherty, Sweeney, O'Donnell, Prophet, and Ritchie have all moved to dismiss the indictments against them. (ECF 202, 204, 206, 207). Sweeney moved to join in Dougherty's motion. (ECF 203). This Court heard argument on the motion to dismiss on June 18, 2014. (ECF 225).

## II. ANALYSIS

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[A]n indictment [is] sufficient so long as it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." United States v. Vitillo, 490 F.3d 314 (3d Cir. 2007) (internal quotation omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent

prosecution." United States v. Bergrin, 650 F.3d 257, 264 (3d Cir. 2011) (internal citations and quotations omitted). "In considering a defense motion to dismiss an indictment, the district court [must] accept[ ] as true the factual allegations set forth in the indictment." United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990). A motion to dismiss is not "a permissible vehicle for addressing the sufficiency of the government's evidence." United States v. DeLaurentis, 230 F.3d 659, 660–61 (3d Cir. 2000) (citations omitted).

## A. RICO

To establish a RICO violation under 18 U.S.C. § 1962(c), the government must prove the following four elements: "(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated . . ., either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity." United States v. Irizarry, 341 F.3d 273, 285 (3d Cir. 2003).

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Racketeering is "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . ." 18 U.S.C. § 1961. A pattern of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "[T]o prove a pattern . . . a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).

Defendants do not challenge that the indictment sufficiently alleges the Ironworkers Local 401 was an enterprise under the statute. They challenge that the indictment fails to allege sufficient facts to show a pattern of racketeering activity under 18 U.S.C. § 1962, and that the alleged acts do not constitute extortion under United States v. Enmons, 410 U.S. 396 (1973).

In United States v. Enmons, the Supreme Court held that strike-related violence for the purpose of achieving "legitimate union objectives such as higher wages in return for genuine services which the employer seeks" did not constitute Hobbs Act extortion. 410 U.S. at 400 (affirming dismissal of an indictment for Hobbs Act extortion based on acts of violence that occurred during a lawful union strike seeking higher wages). But, the Court held "the Hobbs Act has properly been held to reach instances where union officials threatened force or violence against an employer in order to obtain personal payoffs, and where unions used the proscribed means to exact 'wage' payments from employers in return for 'imposed, unwanted, superfluous and fictitious service' of workers." Id. "There is nothing in any of those Acts, however, that indicates any protection for unions or their officials in attempts to get personal property through threats of force or violence." United States v. Green, 350 U.S. 415, 420 (1956) ("Those are not legitimate means for improving labor conditions.").

The key phrase in Emmons is "genuine services which the employer seeks." 40 U.S. at 400. The indictment repeatedly alleges that Defendants threatened contractors and committed acts of violence and destruction for refusing to hire members of the Ironworkers Local 401 when the contractors had already hired non-union labor or labor provided by other unions. Indictment ¶34. The indictment also alleges members of the union were hired "to do nothing" in order to avoid retaliation by the Ironworkers Local 401. Indictment ¶36 (alleging defendant Walsh bragged that he got paid to stand around and do nothing). In one instance, the indictment alleges

4

Defendant Sweeney admitted union labor was unnecessary at the Columbus Boulevard construction site because "the union laborer did not even know how to perform the work being done at the construction site." Indictment ¶37. These allegations support a finding that Defendants used threats and violence to exact unwanted or fictitious work. This is not a valid union objective, and is not protected under Emmons.

### 1. Dougherty and Sweeney

Dougherty and Sweeney contend that the indictment fails to allege facts showing extortion because Overt Act ¶30 is based on a telephone recording that does not support the allegation.

First, a motion to dismiss is not "a permissible vehicle for addressing the sufficiency of the government's evidence." DeLaurentis, 230 F.3d at 660–61. Thus, Defendants' contentions that the evidence does not support the allegations in the indictment is not a basis to dismiss.

Second, the indictment alleges Dougherty and Sweeney participated in the conduct or affairs of the Ironworkers Local 401. Joseph Dougherty is alleged to have controlled the daily operations of the Ironworkers Local 401, coordinated the extortions, coordinated and controlled the criminal activity, and instructed the Business Agents in which job sites to target and "which project he did not want them to 'sabatoge.'" Indictment ¶15. The indictment alleges Edward Sweeny acted as a Business Agent who threatened contractors with violence or destruction if they did not agree to hire the union. Indictment ¶16 ("Sweeny arranged for other members of the Ironworkers Local 401 to commit arson, destroy property and equipment, and otherwise sabotage the construction site in retaliation.").

The indictment alleges in July 2013 Dougherty ordered Sweeney and others to demand a contractor hire union members, threatened violence if he did not comply, and organized acts of

5

violence in retaliation. Indictment ¶32. Dougherty and Sweeney allegedly provided an acetylene torch to members of the union who used it to cut steel support columns at a warehouse in Philadelphia in retaliation for using non-union labor. Indictment ¶33. In addition, the indictment alleges Dougherty, Sweeney, and others formed a plan to burn and sabotage a construction site on Columbus Boulevard when a contractor refused to hire union labor. Indictment ¶38. In another instance, Sweeney allegedly told an official that he would burn the construction site down if the contractor attempted to bring a crane onto the site. Indictment ¶30. Thus, the indictment alleges Dougherty and Sweeney participated in a pattern of racketeering activity by alleging more than two instance of threats or extortion.

Finally, the allegations in the indictment show that the racketeering activity was related because in each instance the extortion, threats, and use of violence or destruction were to cause the contractor to hire members of the Ironworkers Local 401 or other unions. Accordingly, the indictment contains sufficient allegations to support the RICO conspiracy charges against Dougherty and Sweeney.

**2. O'Donnell**

The indictment alleges O'Donnell was a Business Agent for the enterprise, and "participated in the extortions of the contractors who did not hire members of the Ironworkers Local 401 by communicating the explicit and implicit threats from the Enterprise." Indictment ¶21. In July 2013 O'Donnell and Sweeney allegedly threatened a contractor with violence if he did not hire union workers at a site on 31st Street and Spring Garden Street. Indictment ¶32. O'Donnell is also alleged to have blocked the entrance to the construction site and attempted to physically prevent the entry of materials and employees to the site unless the contractor agreed to hire at least two union ironworkers. Indictment Overt Acts ¶¶25-26 & 33 (The contractor

reported the job was using all union labor and additional labor was "unwanted and unnecessary").

O'Donnell contends that the indictment fails to allege that he "struck, hit or threatened anyone, or committed any acts of physical violence." But the indictment does allege that he threatened the contractor with violence. Threats of violence and extortion are both acts of racketeering. Since the indictment alleges two such acts that are connected, for the reasons discussed above, the indictment sufficiently alleges RICO conspiracy against O'Donnell.

### 3. Prophet

The indictment alleges Christopher Prophet worked as a Business Agent and coordinated actions with Dougherty, Sweeny, O'Donnell and the other Business Agents. Indictment ¶19. "Defendant Christopher Prophet personally coordinated and supervised the destruction of property of a Toys R Us store being constructed at or near 160 North Gulph Road, King of Prussia and an assault with baseball bats of certain non-union workers at that construction site." Indictment ¶19. Prophet is accused of personally attacking two employees in retaliation for failing to hire union labor. Indictment Overt Acts ¶¶1-4. These are at least two acts which, for the reasons stated above, are connected. Accordingly, the indictment sufficiently alleges RICO conspiracy against Defendant Prophet.

### 4. Ritchie

The indictment alleges Ritchie also assaulted two employees at the Toys R Us site with a baseball bat in retaliation for refusing to hire members of the Ironworkers Local 401. Indictment ¶28. The indictment further alleges Ritchie threatened a contractor at 30th Street and Market

7

Street "with violence and destruction of property if he refused to hire union ironworkers."[1] Indictment ¶35. These are at least two acts of threats and violence which, for the reasons stated above, are connected. Accordingly, the indictment sufficiently alleges RICO violations against Defendant Ritchie.

**B. Arson**

Dougherty and Sweeney contend that the Government's evidence is insufficient to support the allegation that Dougherty and Sweeney authorized acts of arson and attempted arson in retaliation for failing to hire members of the Ironworkers Local 401. As discussed above, the Court accepts as true factual allegations in the complaint to consider whether they support the offense charged.

The indictment alleges that "Sweeney arranged for other members of the Ironworkers Local 401 to commit arson," Indictment ¶16, and that Sweeney, Dougherty, and others "formed a plan to commit burn" and provided another defendant with an acetylene torch for the purpose of committing arson. Indictment ¶38. These allegations support a charge that Dougherty and Sweeney "aided, abetted, counseled, commanded, induced, and procured" the arson. 18 U.S.C. § 2.

**C. Violent Crime in Aid of Racketeering**

Ritchie is charged with violating 18 U.S.C. § 1959 for committing assault with a dangerous weapon or assault that resulted in serious bodily injury for the purpose of "maintaining or increasing position in an enterprise engaged in racketeering activity," related to the baseball assault at the Toys R Us construction site, recounted above. Count Two. The indictment alleges Ritchie assaulted "non-union workers with baseball bats, resulting in serious injury." Indictment ¶28. This sufficiently alleges assault resulting in serious bodily injury.

---

[1] Ritchie contends the Government does not have any evidence that there even was a construction site at this location or that the incident occurred. As discussed above, this Court only considers whether the facts alleged in the indictment, if true, state the offenses charged.

Ritchie challenges that the indictment does not allege facts showing the assault was committed for the purpose of increasing his position in the enterprise. The indictment alleges the assault was in retaliation for refusing to hire union workers. Indictment Overt Acts ¶3.

The question is whether the purpose of furthering the racketeering activities of the enterprise is sufficient to state a charge under 18 U.S.C. §1959. The indictment alleges the defendants committed acts of violence and vandalism to obtain desirable job assignments and positions of authority within the union. Indictment ¶11. Unlike many of the other Defendants, Ritchie did not hold the title of Business Agent in the union. Indictment ¶22. It could be inferred from the facts alleged that he assaulted employees at the Toys R Us to further his position in the union or obtain desirable job assignments.

### III. CONCLUSION

The indictment alleges sufficient facts to support the charges brought against Defendants Dougherty, Sweeney, O'Donnell, Prophet, and Ritchie.

O:\Criminal Cases\14-69 us v dougherty\14cr69memo.mtd.docx